***********
The Full Commission has reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. The Full Commission affirms the Opinion and Award of the Deputy Commissioner with some modifications.
 ***********
The following were marked and received into evidence by the Deputy Commissioner as: *Page 2 
 EXHIBITS 1. Plaintiff's Exhibit No. 1 — Contains 25 exhibits marked by Tabs 1 through 25.
2. Stipulated Exhibit No. 1 — N.C. Neuropsychiatry medical records (1-51).
3. Stipulated Exhibit No. 2 — N.C. Neuropsychiatry medical records (52-190).
 *********** EVIDENTIARY RULING
Plaintiff moved to strike Defendants' contentions and moved to compel production of email correspondence between Defendants' adjuster and Defendants' counsel. The Deputy Commissioner denied said motions. In addition, the Deputy Commissioner overruled objections to the introduction of correspondence to the claims adjuster and to counsel for Defendants. There are exceptions to the admissibility of settlement communications, specifically N.C. Rules of Evidence 407. Brandis Brown at Section 106 of their North Carolina Evidence treatise (4th Edition, 1993) emphasizes that settlement offers can be admitted under certain circumstances. North Carolina law has long allowed evidence of "habit, custom and course of dealing" to establish that the conduct of a person or organization on a particular occasion was in conformity with the habit or routine practice. N.C. Rules of Evidence 406, 407 andBrandis Brown, North Carolina Evidence, 4th Edition (1993). In this case, there is evidence that Defendants engaged in a pattern and practice of conduct of ignoring needed and ordered medical treatment, as well as repeatedly ignoring written communications from Plaintiff's counsel, in an attempt to force Plaintiff to settle his case. The Full Commission hereby upholds the Deputy Commissioner's ruling.
Prior to the hearing before the Full Commission, Defendants filed a Motion to Receive Additional Evidence. Plaintiff, in his Brief to the Full Commission, objects to Defendants' *Page 3 
Motion. Having considered the positions of both parties, the Full Commission addresses the issues raised in plaintiff's Motion within this Opinion and Award.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On April 20, 2002, Plaintiff suffered a compensable injury of his left hand, the traumatic partial amputation of the four fingers of his left hand. Plaintiff is 49 years old and has no sight in his right eye as a result of a childhood accident. He dropped out of high school in the tenth grade. He has received impairment ratings of between 68% and 75% to his left hand. Following his injuries, he was diagnosed with post-traumatic stress disorder as well as chronic pain with sleep disturbances. The Commission's Opinion and Award of July 2, 2004 ordered that Defendants "shall pay all medical expenses incurred by Plaintiff as a result of this injury by accident" and noted that steering wheel vibration caused irritation and pain in Plaintiff's injured hand. Defendants did not appeal this Opinion and Award.
2. Plaintiff continues to have problems with sleeplessness brought on by pain and anxiety from his workplace accident and continues to have a need for pain medication both from the site of his injury and from overuse of his right arm due to his left hand/arm difficulties. He has had transportation problems and has been denied the reinstitution of medical case management. A review of the medical records in this claim indicates that as early as February 2003, multiple notations were made regarding Plaintiff's chronic pain and sleeplessness associated with his pain and the underlying injury. During 2006, his physicians made requests for medical treatment. From the testimony and medical records, it is evident that many times *Page 4 
during the last year and a half, Plaintiff has had substantial difficulty obtaining prescribed and needed medication. Similarly, he has had repeated difficulty obtaining medical treatment prescribed by his physicians for him.
3. On November 10, 2005, Plaintiff's attorney wrote to opposing counsel indicating that Mr. Broussard was having right shoulder pain for some time and requested treatment with an orthopedist. Defendants never responded and the Plaintiff never received any such treatment.
4. On March 9, 2006, Plaintiff's attorney sought assistance from Defendants and counsel concerning medication problems. Defendants never responded.
5. On March 28, 2006, Plaintiff's attorney requested reinstitution of medical case management by April 6, 2006 to try to help with numerous medical issues. Defendants never responded.
6. On April 19, 2006, Defendants' adjuster telephoned Plaintiff's counsel requesting with his staff that they discuss settlement.
7. On May 5, 2006, Plaintiff's attorney contacted Defendants and their counsel regarding a medication problem. On May 23, 2006, counsel for Defendants inquired of Plaintiff's counsel's staff to see if Plaintiff was receiving Social Security benefits and was informed Plaintiff was not receiving Social Security disability benefits. Two days later, Defendants' counsel made a settlement offer without responding to the medication problems.
8. On July 13, 2005, Plaintiff's chief treating physician pointed out that Plaintiff needed physical therapy to deal with "his painful right shoulder." Medical records as early as April 2005 noted that his right shoulder pain was "secondary to amputation injury." Also on July 13, 2006, the physician noted "numbness in ulnar distribution on the left side." No action *Page 5 
was ever taken by Defendants to address the recommended medical treatment as of the March 30, 2007 contempt hearing.
9. On August 9, 2006, Plaintiff counsel's staff contacted Defendants and their counsel concerning problems with a needed sleep aid. No action was ever taken in regard to this request. However, on August 15, 2006, Defendants' counsel reiterated its earlier settlement offer.
10. Plaintiff counsel's office again contacted counsel for Defendants on August 18, 2006, pertaining to the need for physical therapy for the right shoulder and for the ulnar distribution problem, as well as the problem with sleeplessness. Defendants never responded or took any action. Subsequently, on September 13, 2006, Plaintiff's attorney again contacted Defendants' counsel concerning the physical therapy and medication needs. Once again, Defendants did not respond or take any action.
11. On September 13, 2006, Defendants' counsel wrote Plaintiff's counsel a four-sentence letter enclosing a Form 90. The letter did not otherwise address any matters previously raised by Plaintiff concerning medical needs. Undisputed evidence indicates that with the exception of Defendants' two earlier settlement offers and this letter, between November 2005 and the time that the Show Cause motion was filed on December 7, 2006, Defendants never had any written communication with Plaintiff's counsel.
12. On September 25, 2006, Plaintiff's counsel wrote Defendants' adjuster and counsel pertaining to Plaintiff's Percocet prescription. There is nothing in the record indicating that Defendants responded to this communication. Two days later, on September 27, 2006, Plaintiff's counsel contacted Defendants' counsel regarding Plaintiff's medical needs for orthopedic treatment. Defendants never responded. *Page 6 
13. An examination of Plaintiff's attempt to obtain medical treatment since at least November 10, 2005 indicates that Defendants have not only failed to provide treatment needed and recommended by Plaintiff's physicians, but Defendants have ignored numerous attempts by Plaintiff's counsel and Plaintiff's physicians to obtain treatment consistent with the earlier order of the Commission.
14. On December 7, 2006, Plaintiff's counsel filed a Motion for Order to Show Cause with Chief Deputy Commissioner Stephen Gheen, alleging various violations of the underlying Opinion and Award, chiefly relating to the provision of medical services to Plaintiff. On January 11, 2007, counsel for Defendants filed his opposition. On January 25, 2007, counsel for Plaintiff filed a response to Defendants' opposition.
15. On December 11, 2006, Plaintiff's attorney filed by facsimile and U.S. mail a Rule 607 request. Defendants have never responded to the 607 request.
16. On February 12, 2007, Chief Deputy Commissioner Gheen issued an Order "that the plaintiff and defendants shall appear at the North Carolina Industrial Commission, 9:00 a.m. or as soon thereafter as the matter can be heard, on March 30, 2007 at 430 North Salisbury Street, Raleigh, North Carolina, Dobbs Building, Room 6155 (6th Floor) for a hearing before Deputy Commissioner George Hall" on the matter of enforcement of a previous Order of the North Carolina Industrial Commission and sanctions.
17. At the hearing before the Deputy Commissioner, Plaintiff presented two witnesses, Plaintiff and Ms. Leslie A. Sexton, the legal assistant for the Archibald Law Office. No Defendants were present and Defendants did not present any witnesses or exhibits at the hearing. *Page 7 
18. The failure of Defendants to abide by the Opinion and Award of Deputy Commissioner Chapman as well as the Order of Chief Deputy Commissioner Gheen requiring Defendants to be present at the hearing, is further indication of a practice and pattern contrary to the spirit and the law of the Workers' Compensation Act. The Commission would have benefited by having the testimony of Defendants at the hearing, but Defendants made their decision not to have either their adjuster or any other representative present.
19. Defendants have not complied with the July 2, 2004 Opinion and Award. The July 2, 2004 Opinion and Award remains in force to date and the purpose of the July 2, 2004 Opinion and Award may still be served by compliance.
20. Defendants have not taken steps to bring themselves into compliance with the July 2, 2004 Opinion and Award of Deputy Commissioner Chapman.
21. Defendants have been aware for approximately four years of Plaintiff's medical needs that are the result of his underlying injury. Nevertheless, at least since November 2005, Defendants have consistently failed to provide numerous needed and recommended medical services. Defendants' actions in failing to provide medical services were done with the conscious purpose of trying to bring about a settlement by failing to deal with Plaintiff's pain, sleeplessness problems, and attendant stress and anxiety.
22. The evidence of plaintiff's medical needs is so overwhelming and uncontradicted that defendants' actions since at least November 2005 constitutes an unreasonable defense entitling plaintiff to an award of sanctions, including attorney's fees pursuant to N.C. Gen. Stat. §97-88.1.
23. Plaintiff's counsel provided an affidavit of hours for time expended from the filing of the Show Cause motion through the hearing in this matter. The affidavit indicates 72.7 *Page 8 
hours have been spent pursuing this matter by Plaintiff's counsel along with approximately $1,000.00 for transcripts and other costs.
24. Additionally, Plaintiff's counsel provided an affidavit of hours for time expended from the time the contentions were filed before Deputy Commissioner Hall through the hearing of this matter before the Full Commission. The affidavit indicates 57.5 hours have been spent pursuing this matter during said time period.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Once a Show Cause Order has been issued, the moving party may not withdraw the matter. The Industrial Commission has an independent interest in ensuring its Orders are followed.
2. Defendants willfully refused to comply with the Industrial Commission's July 2, 2004 Opinion and Award and with the Order of the Chief Deputy Commissioner to be present at the above captioned hearing.
3. As of the date of the hearing before the Deputy Commissioner, Defendants were not in compliance with the prior Commission Orders. N.C. Gen. Stat. § 97-80(g) and N.C. Gen. Stat. §§ 5A-21 through 5A-25.
4. There are good grounds that presently exist to impose sanctions and to award attorney's fees and expenses for the work done by counsel for Plaintiff in filing the Motion to Show Cause. North Carolina Industrial Commission Rules 605(5) and 802. *Page 9 
5. Pursuant to N.C. Gen. Stat. § 97-80(g), the undersigned has the authority to assess attorney fees and costs against any party to a workers' compensation proceeding with a hearing that is held before the Industrial Commission pursuant to an Order to Show Cause.
6. Plaintiff is entitled to attorney's fees for Defendants' defense of this claim without reasonable grounds. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For failure to comply with the Industrial Commission's July 2, 2004 Opinion and Award, failure to comply with the Order of the Chief Deputy Commissioner to be present at the above captioned hearing, and given the pattern and practice of Defendants' actions in this matter as demonstrated by the evidence of record, Defendants shall pay sanctions in the amount of $10,000.00 to the North Carolina Industrial Commission.
2. Plaintiff's counsel is entitled to a reasonable attorney's fee for his time in prosecuting this matter. As awarded by Deputy Commissioner Hall, Defendants shall pay Plaintiff's counsel an attorney's fee of $10,905.00 and shall also reimburse Plaintiff's counsel $1,000.00 for costs. Additionally, Defendants shall pay Plaintiff's counsel an attorney's fee of $8,625.00 for the time expended with regard to the appeal of this matter by Defendants.
3. As a sanction for unreasonable defense, Defendants shall pay Plaintiff's attorney a reasonable attorney's fee at the rate of 25% of the compensation due, in addition to and not deducted from the compensation due plaintiff. Every fourth week that Plaintiff is paid ongoing *Page 10 
compensation, Defendant will make an additional payment in the amount of the weekly compensation, directly to Plaintiff's counsel.
4. Defendants shall immediately re-establish medical case management with Ms. Estelle Oakley or a comparable medical rehabilitation professional and Defendants shall ensure excellent transportation.
5. Defendants shall pay the costs.
This the 24th day of March, 2008.
S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ BUCK LATTIMORE COMMISSIONER
 S/___________________ PAMELA T. YOUNG CHAIR *Page 1